**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------X

COULSON AVIATION (USA), INC.,                     :

                                                                           :

                                             Plaintiff,            :          Case No.

                                                                           :

                        -against-                                 :

                                                                           :

ROLLS-ROYCE CORPORATION,                        :

                                                                           :

                                             Defendant.         :

------------------------------------------------------------------X

## COMPLAINT

Plaintiff Coulson Aviation (USA), Inc. ("Coulson") by its attorneys, as and for its

Complaint herein, respectfully alleges as follows:

## THE PARTIES

1.          Coulson is a corporation organized and existing under the laws of the State of

Oregon, with a principal place of business in Portland, Oregon.   Coulson is in the business of,

among other things, the operation and leasing of Lockheed Martin C-130 Aircraft for use in

firefighting missions in North America.

2.          Upon information and belief, defendant Rolls-Royce Corporation ("Rolls

Royce"), is, and at all material times hereinafter mentioned was, a corporation organized and

existing under the laws of the State of Delaware, maintaining a principal place of business in

Indianapolis, Indiana, and is in the business of, among other things, designing and manufacturing

aircraft engines.

## NATURE OF ACTION, JURISDICTION AND VENUE

3.          As more fully described below, this action arises from the breach by Rolls Royce

of an aircraft lease agreement between Coulson, as Lessor, and Rolls Royce, as Lessee, pursuant

to which Rolls Royce agreed to lease from Coulson a certain Lockheed Martin model C-130 Aircraft.  Rolls Royce owes to Coulson approximately $1,800,000 under the express terms of the aircraft lease agreement.

4.      Jurisdiction over the claims against Rolls Royce is properly founded upon 28 U.S.C. §1332, because Coulson, on one hand, and Rolls Royce, on the other hand, are citizens of different states, and the amount in controversy exceeds $75,000.00.

5.      The venue of this action is properly founded upon 28 U.S.C. §1391, because Rolls Royce is a resident of the State of Delaware.

## CHOICE OF LAW

6.      The subject aircraft lease agreement more fully described below requires that it is governed by the laws of the State of New York.

## ALLEGATIONS APPLICABLE
## TO ALL CLAIMS FOR RELIEF

### Coulson and Rolls Royce Enter Into The Aircraft Lease Agreement

7.      On or about November 29, 2017, Coulson, as Lessor, and Rolls Royce, as Lessee, entered into a certain Aircraft Lease Agreement (the "Original Lease") pursuant to which, among other things, Coulson agreed to lease to Rolls Royce a certain Lockheed Martin C-130 airframe bearing manufacturer's serial number 4904 and U.S. Registration Number N130CG (the "Aircraft").  The Original Lease is incorporated by reference herein.

8.      Coulson agreed to lease the Aircraft to Rolls Royce for the purpose of Rolls Royce conducting instrumented flight testing of four T56-A-15A Series 3.5 aircraft engines (the "Engines") in pursuit of certification by the Federal Aviation Administration ("FAA") of its C-130H T56-A-15A Series 3.5 engine configuration for the Temperature Match operating regime.

9.      The Original Lease provided for Rolls Royce to pay two deposits to Coulson. The first deposit, in the amount of $250,000, was required to be paid to Coulson at the time of signing the Original Lease (the "First Deposit").  The second deposit, in the amount of $750,000 (the "Second Deposit," together with the First Deposit, the "Deposits"), was required to be paid to Coulson prior to Rolls Royce getting access to the Aircraft in order to install the flight test equipment and begin preparing the Aircraft for flight testing the Engines during a flight test period of 60 days (the "FTP").

10.     Under the terms of the Original Lease, Rolls Royce agreed to pay Coulson the amount of $30,000 per day during the FTP, which was anticipated to occur between February 1, 2018 and March 31, 2018.

11.     In or about November 2017, in connection with the execution of the Original Lease, Rolls Royce paid the First Deposit to Coulson.

12.     However, soon after paying the First Deposit, it became apparent to Coulson that Rolls Royce would not be in a position to provide the Engines for the Aircraft and complete its work in preparing the Aircraft for the FTP in a timely manner.  By late January 2018, Rolls Royce had still not paid the Second Deposit, had still not provided the Engines for the Aircraft, and had still not prepared the flight instrumentation for the FTP, despite the fact that the anticipated start date for the FTP under the Original Lease was February 1, 2018.

**Coulson and Rolls Royce Enter Into the Lease Amendment**

13.     Accordingly, on or about February 8, 2018, Coulson and Rolls Royce entered into that certain Amendment No. 1 to The Aircraft Lease Agreement (the "Lease Amendment"). Pursuant to the Lease Amendment, Rolls Royce agreed, among other things, to pay for a portion of the FTP in advance and to compensate Coulson for all delays in the commencement of the

FTP attributable to the unavailability of the Engines for installation on the Aircraft and the inability to complete instrumentation on the Aircraft (the Original Lease, as amended by the Lease Amendment, shall be referred to herein as the "Lease").    The Lease Amendment is incorporated by reference herein.

14.    Under the Lease Amendment, the projected start date of the FTP was to begin on April 1, 2018.  In order to accommodate such projected start date, and in order to ensure that the parties had sufficient time to install the Engines and Flight Test Equipment necessary to conduct the FTP in a timely manner, Rolls Royce was required to provide the Engines to Coulson and to make the Engines available for installation on the Aircraft no later than February 12, 2018.

15.    The Lease Amendment further provides that if the Engines were not made available to Coulson for installation on the Aircraft by February 12, 2018, then Rolls Royce would be responsible for any delay after March 1, 2018, at the cost of $30,000 per day.

16.    The Lease Amendment also provides that if the pre-flight test instrumentation was not completed by February 25, 2018, then Rolls Royce would be responsible for any delay, at the cost of $30,000 per day for the period of delay after March 1, 2018.

17.    Finally, pursuant to the Lease Amendment, Rolls Royce was required to pay Coulson rent for the aircraft in the amount of $30,000 per day, for the period from February 1, 2018 through March 1, 2018, during which time Rolls Royce would install the Engines and flight instrumentation, and Rolls Royce also agreed to continue to pay rent to Coulson in the amount of $30,000 per day during any delay caused by the Engines being unavailable for installation or continued pre-flight test instrumentation activity (as described in paragraphs 15 and 16, above).

18.    Thereafter, on or about February 16, 2018, Rolls Royce paid the Second Deposit to Coulson, and Coulson made the Aircraft available to Rolls Royce at the International Air

Response facility, located at 6250 South Taxiway Circle, Mesa, AZ USA 85212.   Rolls Royce

began preparing the Aircraft for the FTP, pursuant to the terms of the Lease.

**Rolls Royce Delays the Installation of the Engines and**
**The Completion of the Flight Instrumentation and Equipment**

19.     After the Lease Amendment was signed and Rolls Royce paid the Second

Deposit, and numerous times thereafter, Coulson requested Rolls Royce to make the Engines

available for installation on the Aircraft, as required pursuant to the terms of the Lease, and as

required in order to timely prepare the Aircraft for the FAA to provide an airworthiness

certification, which was necessary to commence the FTP.

20.     However, despite Coulson's repeated requests for Rolls Royce to permit the

installation of the Engines on the Aircraft, Rolls Royce repeatedly failed and refused to release

the Engines for installation on the Aircraft.

21.     Without the Engines installed on the Aircraft, it was impossible to properly close

up and prepare the Aircraft to obtain flight authority from the FAA, all of which was necessary

to perform the FTP.

22.     In addition, Rolls Royce failed to complete the installation of the flight

instrumentation and related flight equipment, all of which was necessary to obtain flight

authority from the FAA.

23.     After Rolls Royce had accrued fees at the rate of $30,000 per day for the delay

occasioned by its failure to timely make the Engines available for installation and to complete

the instrumentation and flight equipment for the FTP, Rolls Royce demanded that Coulson

amend the Lease again, as a condition to releasing the Engines for installation on the Aircraft.

The further lease amendment proposed by Rolls Royce was designed to avoid its previously

agreed upon payment obligations to pay Coulson for a portion of the FTP in advance.

24.     In response, Coulson declined to release Rolls Royce from its obligations to pay Coulson in advance, as it had agreed in the Lease Amendment.  Instead, Coulson repeatedly requested that Rolls Royce release the Engines for installation on the Aircraft in order for the parties to complete the work necessary to prepare the Aircraft for the FTP, pursuant to the terms of the Lease.

25.     Despite Coulson's repeated requests, without proper cause or justification, Rolls Royce repeatedly refused to make the Engines available for installation on the Aircraft, unless Coulson agreed to further amend the Lease to modify the payment terms.

26.     Despite Coulson's repeated requests, without proper cause or justification, Rolls Royce refused to complete the flight instrumentation on the Aircraft, unless Coulson agreed to further amend the Lease to modify the payment terms.

**Rolls Royce Breaches the Lease**

27.     On or about April 16, 2018, Coulson sent an invoice to Rolls Royce in the amount of $1,350,000 (the "Delay Invoice").  The Delay Invoice was comprised of the delay charge of $30,000 per day, for the period of March 1, 2018 through April 15, 2018 (45 days), for which Rolls Royce was obligated to pay Coulson pursuant to the Lease.

28.     On or about April 17, 2018, Rolls Royce sent a letter (the "Lease Repudiation Letter") to Coulson in which it rejected the Delay Invoice in its entirety and advised Coulson that it refused to pay the Delay Invoice, or any other amounts owed to Coulson pursuant to the Lease.

29.     In response to the Lease Repudiation Letter, Coulson sent to Rolls Royce written notice (the "Default Notice") that, among other things, its bald refusal to pay the Delay Invoice constituted a repudiation and material breach of the Lease, as a result of which Rolls Royce was

in default of its payment obligations under the Lease.

30.     In the Default Notice, Coulson demanded that Rolls Royce cure its default by paying the Delay Invoice in accordance with the terms of the Lease.

31.     Rolls Royce failed and refused to cure its default by paying the Delay Invoice.

32.     Rolls Royce's failure to pay the Delay Invoice constituted an Event of Default under the Lease, entitling Coulson to exercise all remedies under the Lease and at law.

**Coulson Terminates the Lease**

33.     On or about May 4, 2018, as a result of the refusal and failure of Rolls Royce to cure its payment default, Coulson terminated the Lease by sending written notification to Rolls Royce pursuant to the terms of the Lease (the "Termination Notice").

34.     Following the termination of the Lease, Coulson sent invoices to Rolls Royce representing all remaining amounts due and owing from Rolls Royce to Coulson pursuant to the Lease.     As reflected in the invoices rendered by Coulson to Rolls Royce, the total principal amount due from Rolls Royce to Coulson pursuant to the terms of the Lease is $2,805,979.73.

35.     Coulson also sent a statement to Rolls Royce, in which it applied the amount of the Deposits ($1,000,000) against the total amount due and owing to Coulson, leaving a balance due and owing to Coulson in the principal amount of $1,805,979.73 (the "Amount Owed").

36.     Rolls Royce has failed to pay the Amount Owed to Coulson, which remains due and owing to Coulson pursuant to the Lease, despite Coulson's demand for payment thereof.

37.     Coulson performed all of its obligations under the Lease.

38.     As a result of Rolls Royce's repudiation and breach of the Lease, Coulson has suffered damages in the principal amount of at least $1,805,979.73.

## FIRST CLAIM FOR RELIEF AGAINST ROLLS ROYCE

(Breach of the Lease)

39.     Coulson repeats and realleges the allegations contained in paragraphs 1 through 38 above, as if fully set forth herein at length.

40.     By reason of the foregoing, and as a result of the breach by Rolls Royce of its obligations under the Lease, Coulson is entitled to a judgment against Rolls Royce in the principal amount of at least $1,805,979.73, the precise amount of which will be proven at the trial of this action, plus interest accrued and accruing thereon through the entry of judgment herein, plus the costs and expenses of this action, together with such other and further relief as this Court may deem appropriate.

## SECOND CLAIM FOR RELIEF AGAINST ROLLS ROYCE

(Attorney's Fees)

41.     Coulson repeats and realleges the allegations contained in paragraphs 1 through 40 above, as if fully set forth herein at length.

42.     The Lease provides that a breaching party shall be liable for all costs, charges and expenses, including reasonable legal fees and disbursements, incurred by non-breaching Party by reason of the occurrence of any Event of Default or the exercise of the non-breaching party's remedies with respect thereto.

43.     Coulson has incurred costs and expenses resulting from Rolls Royce's breach of the Lease, including but not limited to attorneys' fees and expenses.

44.      By reason of the foregoing, and as a result of the breach by Rolls Royce of its obligations under the Lease, Coulson is entitled to a judgment against Rolls Royce in an amount to be determined at the trial of this action, for the costs and expenses incurred by Coulson as a

result of Rolls Royce's breach of the Lease, including but not limited to all reasonable attorney's fees, costs and expenses.

**WHEREFORE,** Coulson demands judgment against Rolls-Royce Corporation as follows:

(a)      Upon the First Claim for Relief in the principal amount of at least $1,805,979.73, in a precise amount to be proven at the trial of this action, together with interest accrued and accruing thereon through the entry of judgment;

(b)      Upon the Second Claim for Relief in a precise amount to be determined at the trial of this action, for Coulson's fees, costs and expenses, including but not limited to attorney's fees;  and

(c)      Upon all Claims for Relief, granting to Coulson such other and further relief as the Court deems just and proper, together with the costs and expenses of this action.

Dated: May 25, 2018

SMITH, KATZENSTEIN & JENKINS LLP

*/s/ Kathleen M. Miller*
Kathleen M. Miller (No. 2898)
1000 West Street, Suite 1501, P.O. Box 410
Wilmington, DE 19899 (courier 19801)
(302) 652-8400
kmiller@skjlaw.com

TODD & LEVI, LLP
David Rosenberg
444 Madison Avenue, Suite 1202
New York, New York 10022
(212) 308-7400
*Attorneys for Plaintiff*